IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| AU-TOMOTIVE GOLD INC., | No. CIV 01-162-TUC-WDB |
| Plaintiff, | **ORDER** |
| vs. |  |
| VOLKSWAGEN OF AMERICA, INC., et al., |  |
| Defendants. |  |

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment and Defendants' Motions for Summary Judgment. The issues have been fully briefed and oral argument was heard on March 19, 2003. For the following reasons the Court GRANTS Plaintiff's Motion and DENIES Defendants' Motions.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, a Florida company doing business primarily in Arizona, makes license plate frames that include the Volkswagen ("VW") and Audi tradenames and trademarks. They also make decorative front license plates that contain the trademark medallions. Plaintiff asserts that it buys the logos from authorized VW and Audi dealers, then affixes them to the plates. Plaintiff further asserts that it makes clear in its packaging that it is not affiliated with VW or Audi and that these are not licensed products.

BMW sued Plaintiff for trademark infringement for essentially the same activities using its mark, and won an injunction against Plaintiff. *BMW v. Au-Tomotive Gold, Inc.* 1996 WL 1609124 (M.D. Fla.). Plaintiff has, therefore, filed this claim for declarative relief in order to stave off a similar suit from VW.

Plaintiff's Complaint requests the following declarations: (1) Plaintiff has not infringed on Defendant's marks and that Plaintiff may continue its business; (2) Plaintiff has not engaged in trademark counterfeiting under 15 U.S.C. § 1114; (3) Plaintiff has not engaged in unfair competition under 15 U.S.C. § 1125(a) or the common law of Arizona; (4) Plaintiff has not engaged in trademark dilution under 15 U.S.C. § 1125(c) and similar state laws; (5) Defendants have wrongfully interfered with Plaintiff's prospective economic relationships; and (6) Defendants have libeled and/or disparaged Plaintiff.

Primary among Plaintiff's arguments is that it is protected by the "First Sale Doctrine." This doctrine allows that where the accused infringer has properly purchased the trademarked item, repackages it, and gives the consumer adequate notice of the repackaging, no infringement has occurred. *See Prestonettes Inc. v. Coty*, 264 U.S. 359 (1924). Plaintiff also relies on the "aesthetic functionality" doctrine that provides that when a trademark is used for its intrinsic "artistic" qualities, rather than to identify a particular product and its origin, the use is non-infringing. *See International Order of Job's Daughters v. Lindeburg*, 633 F.2d 912, 917 (9th Cir. 1980).

After Plaintiff had filed its Complaint, but before Defendants had Answered or entered an appearance, Plaintiff filed a Motion for Partial Summary Judgment. Defendants did not respond to the Motion, on the belief that it was improperly served by mail and that summary judgment was not appropriate, given the lack of discovery.

Because of the problems with the service of the Plaintiff's Motion for Partial Summary Judgment by mail before Defendant's had answered or entered an appearance in this case under Rule 5(a), Fed.R.Civ.P., the Court denied the Motion for Summary Judgment

1  without prejudice.    Plaintiff has Renewed its Motion for Partial Summary Judgment and
2  Declaratory Relief.  Defendant has also moved for summary judgment.
3  **II.    THE MOTIONS FOR SUMMARY JUDGMENT**
4      **A.    Plaintiff's Motion for Partial Summary Judgment**
5      Plaintiff has asked for partial summary and declaratory judgment on the following
6  issues: (1) that the marquee license plates manufactured and sold by Plaintiff do not infringe
7  Defendants' trademark and do not unfairly compete; and (2) that Plaintiff may continue its
8  business.
9      **B.    Defendants' Motion for Summary Judgment**
10     Defendants ask for summary judgment and declaratory relief on the following: (1)
11 their claims of infringement under the Lanham Act and common law, trademark dilution, and
12 unfair competition; (2) that Plaintiff's use of the trademarks is a "counterfeit" use; (3)
13 statutory damages under the Lanham Act for infringement; (4) attorney's fees; and (5) a
14 permanent injunction against Plaintiff
15 **III.   ANALYSIS**
16     **A.    Summary Judgment Standard**
17     Summary judgment is appropriate when "the pleadings, depositions, answers to
18 interrogatories, and admissions on file, together with the affidavits, if any, show that there
19 is no genuine issue as to any material fact and that the moving party is entitled to a judgment
20 as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of
21 establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477
22 U.S. 317, 323-24 (1986).  That burden may be met by showing that there is an absence of
23 evidence to support the non-moving party's case. *See id.* at 325.  A party opposing summary
24 judgment, however, may not rest on its pleading. *See* Fed.R.Civ.P. 56(e).  Instead, that party
25 must set forth "by affidavit or as otherwise provided by [Rule 56]. . . specific facts showing
26 that there is a genuine issue for trial." *Id.*; *see also Anderson v. Liberty Lobby, Inc., 477 U.S.*
27 *242, 248 (1986).*
28

Here, in its Motion for Partial Summary Judgment, Plaintiff asks the Court to find that there are no facts alleged by the parties that would allow the Court to find that there is dispute sufficient to go to trial on the issue of whether Plaintiff's actions infringed Defendants' trademarks. Defendants ask that the Court find that there is such evidence of infringement that it is unnecessary to go to trial on the issue and instead the Court can find that infringement has occurred. Given this procedural posture, the Court will consider whether sufficient evidence of infringement has been offered by Defendants.

### B. Aesthetic Functionality

While Defendants have attempted to make a prima facie case of trademark infringement and dilution of their mark, this situation does not rise to that level. The facts in this case are much too similar to those in *Job's Daughters*, and too different from the contrary cases, for a finding of infringement. Plaintiff's use of the trademark is protected under the "aesthetic functionality" doctrine and the Defendants have failed to offer any evidence that would have a tendency to show that there is a likelihood of or any actual confusion in the minds of consumers.

In *Job's Daughters*, the Ninth Circuit held that

> [T]he name 'Job's Daughters' and the Job's Daughters insignia are indisputably used to identify the organization, and members of Job's Daughters wear the jewelry to identify themselves as members. In that context, the insignia are trademarks of Job's Daughters. But in the context of this case, the name and emblem are functional aesthetic components of jewelry, in that they are being merchandised on the basis of their intrinsic value, not as a designation of origin or sponsorship.

*Job's Daughters*, 633 F.2d at 918. Such is the case here. The VW and Audi logos are used not because they signify that the license plate or key ring was manufactured or sold (i.e. as a designation of origin) by Volkswagen or Audi, but because there is a aesthetic quality to the marks that purchasers are interested in having.

The Ninth Circuit went on to hold that:

> [T]here is some danger that the consumer may be more likely to infer endorsement or sponsorship when the consumer is a member of he group whose collective mark or trademark is being marketed. Accordingly, a court must closely examine the articles themselves, the defendant's merchandising

      practices, and any evidence that consumers have actually inferred a connection between the defendant's product and the trademark owner.

*Job's Daughters*, 633 F.2d at 919. Here, Plaintiff has stated clearly on the packaging and on the actual product that the product is not manufactured or licensed by VW or Audi, that instead it was produced by Au-Tomotive Gold. Defendant's have not offered any evidence of actual confusion.

      Defendants have raised the question of whether *Job's Daughters* is still good law. The case has not been reviewed by the Supreme Court, as *certiorari* was denied. In more recent cases the Ninth Circuit has stated that "the aesthetic functionality test has been limited, if not rejected." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1382 n. 3 (9th Cir. 1987) (design and color of container for antifreeze). However, the cases in which aesthetic functionality has been rejected have been trade dress cases.

      The case cited in *Fred Meyer* for the proposition that aesthetic functionality has been rejected, is *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769 (9th Cir. 1980) (whether similar designs used on handbags and luggage was infringing). *Vuitton*, however, was decided at the same time as *Job's Daughters* and cites as authority the same case *Job's Daughters* did, *Pagliero v. Wallace China Co.*, 198 F.2d 339 (9th Cir. 1952). In *Pagliero*, the court made a distinction between trademarks and functional features. Because the defendant in *Job's Daughters* was not using the mark for its ability to identify origin, but rather for its decorative effect, the use was not infringing. On the other hand, in *Vuitton*, it is clear that the manufacturer of the offending product had slightly modified the Vuitton mark and design features in order to create "knock-offs" of a well-known product. The intent was to either create confusion or borrow the cache of the Vuitton product.

      Likewise, in the more recent cases cited by Defendants, trade dress has been at issue. *See Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252 (9th Cir. 2001) (decorative details of pool halls). In all these cases the aesthetic qualities at issue were being used to advertise and sell goods that were similar to those sold by the trademark holder. This is not the case here.

      The only case truly similar to this one in this circuit is *Porsche AG v. Universal Brass, Inc.*, 1995 WL 420816 (W.D. Wash.), decided by Judge Coughenour. In this case, defendant was copying the Porsche logo for key chains, license plate frames, valve stem caps and paper weights. Rather than buy the logos from the manufacturer, defendant cast its own, including the encircled "R" in the logo. Defendant did not warn customers that the products were not manufactured or endorsed by Porsche. Plaintiff had evidence that there was actual confusion about the origin of the product. Judge Coughenour found that there was evidence sufficient to show that the products were infringing. The Judge went on to say that the situation was different between *Job's Daughters* and *Porsche*, as Porsche uses its mark in connection with the sale of goods, while the Job's Daughter's mark was merely and emblem to identify association or membership in an organization.

      While under *Job's Daughters*, the actions of the defendant in *Porsche* can be found infringing because of the lack of warnings and evidence of actual confusion, the Court does not agree with the Judge's distinction between the organization and goods. Furthermore, the *Porsche* case has not been published and there is nothing that suggests definitively that *Job's Daughters* has been overturned when applied to this fact pattern.

## IV. CONCLUSION

Accordingly, the Court finds that Defendants have offered insufficient evidence to show that there is a question of material fact that might lead a fact-finder to conclude that infringement of their trademarks had occurred.

IT IS HEREBY **ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **GRANTED** and that Defendants' Motion for Summary Judgment is **DENIED**..

IT IS FURTHER **ORDERED** that the parties each file a memorandum with the Court, no later than April 25, 2003, briefing any outstanding issues in this matter.

DATED this 7 day of April, 2003.

William D. Browning
Senior United States District Judge