FILED ___ LODGED
RECEIVED ___ COPY

JUN 11 2003

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Au-TOMOTIVE GOLD, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>VOLKSWAGEN OF AMERICA, INC., et al.,<br><br>    Defendant. | No. CIV 01-162-TUC-WDB<br><br>**ORDER** |

This case was originally filed as two cases, the first by Plaintiff Au-Tomotive Gold ("AGI") (Civ 01-162-TUC) for declaratory judgment and the second by Defendants Volkswagen and Audi ("VW") (Civ 01-508-TUC) on eight claims revolving around an alleged infringement of VW's trademarks. The cases were consolidated under the more senior case (Civ 01-162-TUC), resulting in an odd procedural posture and a variety of claims and counter claims. This Court heard the parties' Motions for Summary Judgment and issued an Order on April 7, 2003, finding that the use of Defendant's trademarked logos was not infringing because the use was for the marks' "aesthetic functionality" rather than to designate a place of origin for a product. The Court then requested that the parties brief it on any remaining issues. That briefing is pending before the Court, as is Defendants' Motion for Reconsideration, Defendants' Motions for Clarification and for Leave to Amend

Complaint and Scheduling Order to include a claim for trademark dilution, and Plaintiff's Motion for attorneys' fees and non-taxable expenses.

## I. MOTION FOR RECONSIDERATION

Defendants' Motion for Reconsideration is denied.

## II. TRADEMARK DILUTION

### A. The Claims and Counterclaims

The parties dispute whether Defendants have made an express claim of trademark dilution and whether, if they have not, Defendants may amend their pleadings to include such a claim. Plaintiff argues that such an amendment would be futile.

Plaintiff filed six claims in its Complaint on April 19, 2001: (1) requesting declaratory judgment that its products do not infringe on Defendants' trademarks and an injunction to prevent Defendants from claiming that they do; (2) requesting declaratory judgment and an injunction regarding the issue of trademark counterfeiting under Arizona law; (3) requesting declaratory judgment and an injunction regarding unfair competition; (4) requesting declaratory judgment and an injunction regarding trademark dilution; (5) a claim of tortious interference with prospective economic advantage; and (6) a claim of trade libel and disparagement. Claims III (unfair competition) and IV (dilution) were dismissed without prejudice by the parties on January 8, 2002.

In their original Complaint in case Civ 01-508-TUC, Defendants made eight claims: (1) trademark infringement; (2) false designation of origin; (3) Arizona consumer fraud; (4) tortious interference with business expectancy; (5) trademark counterfeiting under Arizona law; (6) unfair competition; (7) unfair trade and competition under Arizona law; and (8) requesting a declaratory judgment regarding these claims. When the two cases were consolidated, Defendants answered Plaintiff's Complaint on June 1, 2001, and made the following counterclaims: (1) trademark infringement; (2) false designation of origin; (3) trademark dilution; (4) consumer fraud; (5) interference with contract; (6) interference with business expectancies; (7) trademark counterfeiting; and (8) declaratory judgment.

1  Defendants then amended their counterclaims on August 3, 2001, to make claims of (1) false
2  designation of origin; (2) unfair competition; (3) declaratory judgment; (4) tortious
3  interference with contract; and (5) interference with business expectancies. It is unclear
4  whether Defendants intended the Amended Counterclaims to secede its first Answer and
5  Counterclaims or to supplement it.
6      It appears that Defendants' original counterclaim of trademark dilution was not carried
7  over into their Amended Counterclaims and that the Plaintiff later dismissed its claim
8  regarding the same. The Stipulation for Dismissal, drafted by Defendants, states "[t]his
9  dismissal is sought to simplify issues presented to the jury and for no other reason."
10 Accordingly, the Court finds that the parties, by stipulation, agreed not to litigate the issue
11 of trademark dilution.
12     **B.**    **Motion for Clarification or Leave to Amend**
13     Defendants have requested that the Court clarify whether a claim exists on the issue
14 of trademark dilution or, in the alternative, to grant them "leave to file . . .[a] First Amended
15 Complaint." As stated above, the Court finds that the parties purposefully decided not to
16 litigate the issue of trademark dilution. The decision to dismiss the claims involving dilution
17 was "without prejudice" and, theoretically, the parties could decide at a later date to litigate
18 them. However, a First Amended Complaint by the Defendants is not procedurally possible.
19 Instead, Defendants must request leave to file second amended counterclaims, including the
20 the trademark dilution claim. The Court will construe Defendants' request as such.
21     **C.**    **Futility of Amendment**
22     Notwithstanding the dubious propriety of reviving a claim that was dismissed by a
23 stipulation drafted by the party requesting the amendment, the Court shall consider whether
24 such an amendment is possible. Defendants have argued that the courts generally regard
25 such requests liberally, particularly where they are made to conform the claims to the
26 evidence presented. The parties did address dilution is their motions for summary judgment.
27
28

1  Now Plaintiff has noted that an amendment would be futile, as Defendants cannot prove the
2  claim.
3        A prima facie federal trademark dilution claim under 15 U.S.C. § 1127 requires the
4  trademark holder show that its trademark has either been weakened in its ability to identify
5  a particular product or manufacturer ("blurring") or has been "tarnished" by association with
6  lesser quality goods. The trademark holder must establish that (1) the senior mark is famous;
7  (3) the senior mark is distinctive; (3) the junior use is a commercial use in commerce; (4) the
8  junior use started after the senior mark became famous; and (5) the junior use must cause
9  dilution of the distinctive quality of the senior mark. *See Nabisco, Inc. v. PF Brands, Inc.*,
10 191 F.3d 208, 215 (2nd Cir. 1999). In this case, the first four requirements can arguably be
11 made by the Defendants. The fifth, whether the use by Plaintiff actually dilutes the
12 "distinctive quality" of the mark is questionable.
13       Here, Plaintiff is not using a mark that is similar to Defendant's mark either to confuse
14 the buyer of the origin of the goods or to gain a free ride on the reputation of Defendant for
15 quality. They are not selling inferior cars with the Volkswagen logo plastered on them, nor
16 are they selling shoes with the intention of fooling the public into believing that they are
17 manufactured by Volkswagen. *See Viacom v. Ingram Enters., Inc.*, 141 F.3d 886, 888 (8th
18 Cir. 1998) (the statute "creates a remedy against non-competing trademark uses such as
19 DuPont shoes, Buick aspirin, and Kodak pianos.") Rather, Plaintiff is using logos,
20 manufactured and sold by the trademark holder to create a secondary product that is likely
21 to appeal to persons who have already purchased the trademark holder's product. As Plaintiff
22 has argued, this use could be considered as enhancing rather than detracting from Defendants'
23 mark.
24       As the Court has previously found, Plaintiff's use of the trademarks is permissible
25 under the aesthetic functionality doctrine, and is not infringing. Unless Defendants could
26 show that Plaintiff's products are of inferior quality and leave an impression that Defendants
27 manufactured them, the Plaintiff's uses of the trademarks do not dilute the trademarks. The
28

Court has already established that Plaintiff has supplied sufficient notice to customers that the products are not manufactured by Defendants to prevent consumers from being confused by the source of Plaintiff's goods.

Accordingly, unless Defendants are prepared to present evidence showing actual dilution of their marks in the minds of consumers, they cannot make a claim of trademark dilution. As the Court has found that parties decided not to litigate this claim in January 2001, it would seem to be unfair to allow Defendants the additional time necessary for the discovery of such evidence.

The Motion for Leave to Amend is denied.

### III.    FIRST SALE DOCTRINE

Defendants have suggested that Court ought to enter a final, appealable order on the Plaintiff's argument that the "first sale" doctrine applies in this matter and is a defense to a claim of trademark infringement in order to avoid remand, should the Ninth Circuit not agree with the Court's decision based on the aesthetic functionality doctrine. The Court declines to consider this defense.

### IV.    TORTIOUS INTERFERENCE AND TRADE LIBEL

In its Complaint, Plaintiff made claims of tortious interference with prospective economic advantage and trade libel and disparagement. Plaintiff has suggested in its briefing that summary judgment for Plaintiff should be granted as to these claims as well.

Plaintiff has not previously requested summary judgment on these claims, rather, Defendants argued in their Motion for Summary Judgment that Defendant Continental Enterprises' actions in attempting to prevent retailers from purchasing Plaintiff's products was permissible and neither tortious interference with business relationships or libel. Plaintiff argued in response that whether Defendants engaged in these torts was a fact question that should be placed before a jury.

Because the Court has not seen evidence that would suggest that there is no issue of material fact and Plaintiff has affirmatively argued that there are questions of fact concerning these claims, summary judgment is not appropriate and these claim survive.

## V. MOTION FOR ATTORNEYS' FEES AND COSTS

The Motion for attorneys' fees and non-taxable costs is denied as premature, because claims remain to be resolved.

## VI. CONCLUSION

In accordance with the evidence presented by the parties in their Motions for Summary Judgment and the subsequent briefing,

IT IS HEREBY **ORDERED** that

1. Defendants' Counterclaims I (false designation of origin), II (unfair competition), III (declaratory judgment), and IV (interference with contract) are **DISMISSED** with prejudice;

2. Defendants' counterclaims not included in the First Amended Counterclaims (trademark infringement, trademark dilution, consumer fraud under A.R.S. § 44-1521, interference with business expectancies, and counterfeiting under A.R.S. § 44-1453) are **DISMISSED** with prejudice;

3. Plaintiff's request[1] for declaratory judgment and an injunction with respect to trademark infringement, counterfeiting, and its right to continue business (Claims I and II) is **GRANTED**;

4. Defendants' Motion for Reconsideration and Motion for Clarification or Leave to Amend are **DENIED**; and

5. Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs is **DENIED** as premature.

---

[1] Plaintiff, in its briefing on remaining issues of April 19, 2001, stated that a declaration and injunction concerning unfair competition was necessary. However, this claim was dismissed by the parties on January 8, 2002.

IT IS FURTHER **ORDERED** that the parties shall file a Joint Proposed Pretrial Order not later than 30 days after the filing of this Order on Plaintiff's Claims V and VI. In the alternative, the parties shall contact the Court to request a status conference no later than June 23, 2003.

DATED this 10 day of June, 2003.

William D. Browning
Senior United States District Judge