IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Au-Tomotive Gold, Inc.,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>Volkswagen of America, Inc.; Audi of America Inc.; Volkswagen Aktiengesellschaft; Audi Aktiengesellschaft; and Continental Enterprises,<br><br>    Defendants/Counterclaimants. | No. CV 01-162 TUC FRZ<br><br>**ORDER** |

I.

Plaintiff/CounterDefendant Au-Tomotive Gold, Inc. ("Auto Gold") filed the Complaint in this action on April 19, 2001 against Defendants/Counterclaimants Volkswagen AG and Volkswagen of America, Inc. (collectively "VW") and Audi AG and Audi of America, Inc. (collectively "Audi") seeking a declaratory judgment that its production and sales of automobile accessories did not constitute trademark infringement or trademark counterfeiting under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), or trademark dilution under 15 U.S.C. § 1125(c).

VW and Audi filed counterclaims for trademark infringement under 15 U.S.C. § 1114(1)(a); false designation of origin under 15 U.S.C. § 1125(a); trademark dilution under 15 U.S.C. § 1125(c); consumer fraud under the Arizona Consumer Fraud Act; tortious

1 interference with contract; tortious interference with business expectancy; trademark
2 counterfeiting under the Arizona Consumer Fraud Act; and a request for declaratory
3 judgment as to all claims.

4 Then, as explained by the Court of Appeals for the Ninth Circuit, "[f]rom this point,
5 the case became a maze of counterclaims, stipulated dismissals, and new complaints. This
6 procedural morass was made all the more complicated when some of Volkswagen and Audi's
7 complaints migrated from the original counterclaim to a separate complaint that was later
8 consolidated with the original action." *Au-Tomotive Gold, Inc. V. Volkswagen of America,*
9 *Inc.*, 457 F.3d 1062, 1066 (9th Cir. 2006), *cert. denied*, 127 S.Ct. 1839 (2007).

10 In its opinion, filed August 11, 2006, the Ninth Circuit reversed the district court's
11 denial of summary judgment, finding in favor of VW and Audi on the issue of infringement
12 under 15 U.S.C. § 1115(b) and remanded "for consideration of the 'first sale' defense and
13 any other related claims or defenses." *Id.*

14 This case was reassigned to the undersigned on November 13, 2006.

15 Before the Court for consideration is the Motion for Summary Judgment of
16 Defendants/Counterclaimants Volkswagen and Audi, filed May 21, 2007, seeking a
17 permanent judgment as a matter of law on VW and Audi's claims of trademark infringement
18 under the Lanham Act.

19 A hearing was held in this matter on October 22, 2007 and the matter was taken under
20 advisement.

21                                              II.

22 In their motion for summary judgment, Defendants assert that the only liability issue
23 remaining, on which the Ninth Circuit remanded this case, is whether Auto Gold can assert
24 a "first sale" defense. Defendants argue that under the Ninth Circuit's opinion, which
25 conclusively determined that the products at issue are likely to confuse customers, and thus,
26 VW and Audi have established a prima facie case with respect to infringement in violation
27 of the Lanham Act, that the material facts are undisputed and Defendants are entitled to
28 judgment on the question of the viability of Auto Gold's first sale defense.

1         Defendants cite *Sebastian International, Inc. v. Longs Drug Stores Corp*, 53 F.3d
2 1073 , 1076 (9th Cir. 1995), explaining that a trademark holder has no right to object when
3 a third party displays and resells genuine merchandise under the producers' trademark.
4 Defendants use the example that "once a genuine Volkswagen brake caliper is sold to a
5 customer, the customer may resell that caliper and VW has no right to object" under the first
6 sale doctrine. To illustrate the exception to the first sale defense, Defendants use the
7 example, that if the purchaser of the Volkswagen brake caliper uses the caliper to build its
8 own anti-lock brake system, it can no longer be sold under the VW brand because it is not
9 a genuine VW brake system, and thus, a recognized limitation to the first sale defense is that
10 the mere sale of a trademarked product does not give the purchaser the right to alter the
11 product and resell it as if it were genuine. See *Karl Storz Endoscopy v. Surgical*
12 *Technologies, Inc*., 285 F.3d 848, 856 (9th Cir. 2002); *Rolex Watch, U.S.A., Inc. V. Michel*
13 *Co.*, 179 F.3d 704, 710 (9th Cir. 1999).

14         Defendants first argue that Auto Gold has asserted its first sale defense to only one
15 of its products, the "VW" medallion license plates, and that it should be noted that Auto Gold
16 has no defense whatsoever for the rest of its counterfeit key chains, license plates, and license
17 plate frames, for which the Ninth Circuit's conclusive finding of *prima facie* infringement
18 stands entirely unrebutted, and therefore, VW and Audi are entitled to judgment as a matter
19 of law. See *Au-Tomotive Gold*, 457 F.3d at 1074-78.

20         Defendants next argue that it is undisputed that Auto Gold uses the VW medallions
21 in manufacturing an entirely new product by using its own materials and its own
22 specification, in some instances simply by gold-plating the medallions.

23         Defendants further argue that the VW medallion license plates are not protected under
24 the first sale doctrine, an important - but limited - restriction on trademark rights because
25 Auto Gold "has done much more than 'merely stocking and reselling' genuine VW®
26 medallions." See *Sebastian*, 53 F.3d at 1076. Defendants provide a thorough analysis of the
27 Ninth Circuit decisions addressing the restrictions of the first sale doctrine in cases where the
28 reseller uses genuine trademarked items as a component in the manufacturing of a new

product in *Rolex Watch*, *Karl Stroz*, and *Westinghouse v. Electric Corp v. General Circuit Breaker & Electric Supply, Inc.* 106 F.3d 894, 900 (9th Cir. 1997).[1]

Defendants also argue that they are entitled to a permanent injunction as a matter of law, and that "irreparable injury may be presumed' from a showing of a likelihood of confusion in a trademark case. *GoTo.Com, Inc. V. Wal Disney Co.*, 202 F.3d 1199, 1205 n. 4 (9th Cir. 2000)(citation omitted).

In conclusion, Defendants assert that the Court should grant judgment as a matter of law and enjoin Auto Gold from any further sale of its products bearing the VW and Audi Trademark and direct the parties to proceed with discovery on the remaining issues as to damages and restitution.

In response, Auto Gold, setting forth a factual and procedural history, focuses on the fact that it "immediately stopped manufacturing any products displaying VW trademarks or logos and refused to fill any new orders for such products ..." and that "[s]hortly thereafter, Au-Tomotive Gold placed on its website, where it remains today, notification of its cessation of the manufacture and sale of such products."[2]

Auto Gold focuses on the packaging material, specifically that "[t]he cardboard backing indicated in places that Au-Tomotive Gold, Tucson, Arizona, was the manufacturer of the product, identified www.autogold.com as its website, and stated in two places that the plates are 'Made in the U.S.A.'"[3]  To show that there is no evidence of actual confusion, Auto Gold further asserts that "[t]he cardboard backing also directed the ultimate customer to 'see the label on the part or packaging for details' as to whether the product is authorized by the vehicle manufacturer," and that such directions were affixed to the back of each license plate and frame described.

---

[1] Motion for Summary Judgment, pages 8-10.

[2] Plaintiff's Opposition to Defendants' Motion for Summary Judgment, pages 2 - 5.

[3] Id., page 5.

Auto Gold cites the decision of the Ninth Circuit's order of reversal and remand, that no evidence of actual confusion has been presented.

Auto Gold argues that it's use of logos that VW released into the marketplace was protected by the first sale doctrine, first enunciated in *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924), and that under this doctrine, resale by the first purchaser of the original article under the producer's trademark is generally neither trademark infringement nor unfair competition. *Enesco Corporation v. Price/Costco Inc.*, 146 F.3d 1083, 1084 (9th Cir. 1995). Auto Gold cites a number of district court decisions to support its argument that there is no infringement based on disclosures to avoid deception and confusion[4] and rely on *BMW of North America, Inc. v. AuTomotive Gold*, 1996 WL 1609124 (D.D.Fla.). Auto Gold argues that *Rolex* and the cases relied upon by the Defendants are inopposite or raise a "distinction without a difference" under the first sale doctrine.[5]

Auto Gold contends that "[t]he branch of the Doctrine addressed here generally involves a fundamentally different product incorporating a trademarked component," and "[t]hus, the dispositive factor is 'whether end users of the product are likely to be misled as to the party responsible for the composition of the product.' *See Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F. 3d 848, 857 (9th Cir. 2002.)"[6] Auto Gold argues that this standard applies even in cases where quality differences may actually exist. *See Enesco Corporation,* 146 F. 3d at 1087.

Auto Gold concludes that the effectiveness of its disclosures under the first sale doctrine raise a genuine issue for trial.

Auto Gold also raises a cursory statute of limitations argument and a laches defense, and concludes that injunctive relief is inappropriate at this juncture because genuine issues

---

[4]Id, pages 5-7.

[5]Id, pages 8-10.

[6]Id, page 10.

- 5 -

for trial on questions of whether Auto Gold's incorporation of genuine VW logos into its products is acceptable under the Lanham Act.

Defendants argue that Auto Gold's statute of limitations and laches defenses fail, because VW's claims were timely brought within the Arizona three-year statute applicable to claims sounding in fraud and that Auto Gold has not suffered cognizable prejudice to support a laches defense.

III.

In remanding this case for further consideration, the appellate court summarized that, although VW and Audi did not present evidence of actual confusion, neither had Auto Gold presented evidence that the disclaimers had any effect. "At best, the confusion factor is in equipoise." 457 F.3d at 1078.

Following the court's analysis in *Sleekcraft*, finding that the key facts in this case were undisputed, the Ninth Circuit found that VW and Audi "established a prima facie 'exclusive right to use the ... mark in commerce.'" 457 F.3d at 1078 (citing 15 U.S.C. § 1115(b)).

> The Ninth Circuit employs an eight-factor test (the "*Sleekcraft*" factors) to determine the likelihood of confusion: (1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) defendant's intent; (8) likelihood of expansion. *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 631 (9th Cir. 2005); *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).[7] These elements are not applied mechanically; courts may examine some or all of the factors, depending on their relevance and importance. *See Surfvivor*, 406 F.3d at 631.

457 F.3d at 1076.

As reasoned by the Defendants, although Auto Gold, or any person or entity, can acquire a genuine registered trademark emblem, the "lawful acquisition of the emblem does not give them the right to attach it to a new item of manufacture that is not licensed by VW" ... and if Auto-Gold's "defense were accepted – blatant trademark infringers would be empowered to circumvent the Lanham Act by selling a broad range of counterfeit accessories

---

[7] Abrogated in part on other grounds by Mattel, Inc. V. Walking Mountain Productions, 353 F.3d 792 (9th Cir. 2003).

- 6 -

from wheels to radiators bearing a brand-name certificate of authenticity but lacking any genuine connection to the trademark holder." Defendants further suggest such would create "a gaping loophole in the trademark afforded under the Lanham Act" which is foreclosed under Ninth Circuit case law which clearly rejects the first sale defense proffered by Auto Gold.

Auto Gold correctly states that the Ninth Circuit found "no evidence of confusion," but does not elaborate that the court noted that "[s]horn of their disclaimer-covered packaging, Auto Gold's products display no indication visible to the general public that the items are not associated with Audi or Volkswagen. The disclaimers do nothing to dispel post-purchase confusion." *Id.* at 1077-78.

The panel explained that "[t]he law in the Ninth Circuit is clear that 'post-purchase confusion,' *i.e.*, confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act." *Id.* at 1077 (*quoting Karl Storz*, 285 F.3d at 854). Thus, the issue this Court must review on remand is narrowed to whether, "the strength of VW and Audi's marks, Auto Gold's intentional and exact copying of the marks, and the direct competition for a specific and limited consumer group, all weigh heavily in favor of a likelihood of confusion." 457 F.3d at 1078.

The Court finds that Auto Gold does not adequately address the issue of post-purchase confusion, but rather attempts to distinguish the facts in this case, which are undisputed.

Upon review of all matters submitted, the Court finds that Auto Gold has failed to state facts to sustain a first sale defense or substantiate any other defense, including statute of limitations or laches. Based on the foregoing,

IT IS HEREBY ORDERED that the Motion for Summary Judgment of Defendants/Counterclaimants Volkswagen and Audi is GRANTED; Accordingly,

IT IS FURTHER ORDERED that Plaintiff/Counterdefendant Au-Tomotive Gold, Inc. is permanently enjoined from any further sale of its products bearing the VW and Audi trademarks;

IT IS FURTHER ORDERED that the parties shall file a Joint Status Report, in regard to proceeding with discovery on issues pertaining to damages and restitution, on or before May 1, 2008.

DATED this 31st day of March, 2008.

FRANK R. ZAPATA
United States District Judge